## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **U.S. COMMODITY FUTURES TRADING COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | **1:11-cv-2038-WSD** |
| **LOUIS J. GIDDENS, JR., ANTHONY W. DUTTON, and MICHAEL GOMEZ,** | |
| **Defendant.** | |

## OPINION AND ORDER

This matter is before the Court on Defendants Louis J. Giddens, Jr. and

Anthony W. Dutton's Motion for a More Definite Statement [42] and on Freeman

L. Walker's Motion to Intervene as a Plaintiff [53].

## I.    BACKGROUND

Plaintiff United States Commodity Futures Trading Commission ("CFTC")

claims that Defendants Giddens and Dutton made fraudulent misrepresentations to

investors in connection with commodity investment pools that Giddens and Dutton

formed for the purpose of investing in off-exchange foreign currency ("forex")

transactions.  The CFTC further claims that Defendants Dutton and Michael

Gomez misappropriated investor funds from the commodity pools.

Giddens and Dutton separately formed and were the principals of Currency

Management Group L.L.C. ("Currency Management") and Pinnacle Capital

Partners L.L.C. ("Pinnacle Capital"), respectively.  (Compl. ¶¶ 15-16).  Both

companies were dissolved in late December 2010.  (Id.).  Currency Management

received at least $600,000 in funds from outside investors, while Pinnacle Capital

received at least $800,000.  (Id. ¶ 1).  Currency Management and Pinnacle Capital

transferred their participants' funds to Pinnacle Trade Group, L.L.C. ("Pinnacle

Trade"), an entity created and controlled by Giddens and Dutton for the purpose of

conducting the forex transactions.  (Id. ¶¶ 1, 17).  Pinnacle Trade used some of the

pool participants' funds to conduct forex transactions.  It also transferred about

$800,000 of its pool participants' funds to Elyon L.L.C. ("Elyon"), an entity

controlled by Defendant Michael Gomez, for the purpose of Elyon conducting

forex transactions on Pinnacle Trade's behalf.

The CFTC alleges that Giddens and Dutton solicited pool participants to

invest in Currency Management and Pinnacle Capital by falsely stating that "in

return for their investment in the pool, the pool participants would receive,

depending on how much they invested, a guaranteed five or ten percent monthly

return on their investment." (Compl. ¶ 23-24).  The CFTC further alleges that when investors sent funds to either Currency Management or Pinnacle Capital, Giddens and Duttons would issue promissory notes to the pool participant on behalf of their respective companies.  (Id. ¶ 25).  The promissory notes stated that the company that executed the note promised to pay the pool participant their principal investment along with interest on any unpaid principal at the rate of either five or ten percent (5 or 10%) per month.  (Id.).  The notes further promised to pay the principal balance on the note within 30 days of the participant's written demand.  (Id.).

The CFTC describes one alleged transaction involving Currency Management, which Giddens controlled.  In late March 2010, a pool participant invested $10,000 in Currency Management after Giddens promised the participant that the investment would receive a guaranteed ten percent (10%) monthly return by conducting forex transactions.  (Compl. ¶ 26).  On or about March 25, 2010, the investor wired the funds to Currency Management's account.  (Id.).  On March 25, 2010, Giddens sent a promissory note executed by Currency Management to the participant.  (Id.).  The note stated that Currency Management promised to pay the participant his $10,000 principal investment plus an interest rate of ten percent (10%) per month.  (Id.).  The note promised to pay the interest on the 25th day of

each month, beginning in April 2010, and stated that the principal balance would be returned within thirty (30) days of a written demand by the pool participant. (Id.).

Between February and September 2010, Currency Management and Pinnacle Capital issued monthly account statements to pool participants that were available on the companies' websites. (Compl. ¶¶ 29, 31). The CFTC alleges that between approximately June and September 2010, these account statements falsely overstated the performance and profitability of the pool participants' investments. (Id. ¶¶ 30, 32). One account statement issued by Currency Management to a pool participant stated that the pool participant's initial investment on April 14, 2010, of $15,000 had earned ten percent (10%) interest, compounded monthly, each month until October 24, 2010. (Id. ¶ 30). Another account statement issued by Pinnacle Management stated that the participant's initial investment on April 2, 2010, of $150,000 had also earned a return of ten percent (10%), compounded monthly, each month until October 24, 2010. (Id. ¶ 32). The CFTC alleges these account statements were false because Pinnacle Trade and Elyon, the entities that conducted the forex transactions using the participants' funds, suffered significant losses on their forex transactions each month from June to October 2010. (Id. ¶ 34). By October 2010, the two accounts allegedly had lost over $800,000. (Id.).

In their Motion for a More Definite Statement, Defendants Giddens and Dutton assert additional details about their respective commodity pools, and they argue that, in light of those facts, they cannot meaningfully answer the CFTC's complaint.  Defendant Giddens states that Currency Management had 28 investors and notes that the CFTC has only alleged a single transaction involving one investor who wired funds to Currency Management on approximately March 25, 2010.  Giddens contends that 13 of the other investors are close friends and relatives who will likely state that they understood that the returns on the forex transactions were not guaranteed.  He further states that he only solicited one other investor, his soon-to-be ex-brother-in-law Kevin Beauregard, who in turn solicited the other 11 pool participants who invested in Currency Management.  Giddens argues that he did not make false statements to his 13 close friends and relatives, and did not make any statements to the 11 participants that Kevin Beauregard solicited.  Based on these assertions of fact, Giddens argues he cannot answer the CFTC's allegations that he made false statements to solicit pool participants, because he does not know the content of the alleged misrepresentations or when and where the misrepresentations occurred.

Defendant Dutton contends that Pinnacle Management had ten investors and that the CFTC has not alleged a single false statement made by Dutton to those

participants.  He states that eight participants are close friends or relatives who will

likely testify that they understood the risks of their investment with Pinnacle

Capital.  He also asserts that he never spoke to the other two investors.  In light of

these facts, Dutton claims he cannot answer the CFTC's allegations that he made

fraudulent misrepresentations in connection with soliciting investors without a

better understanding of the content of the alleged misrepresentations and when and

where the specific misrepresentations occurred.

## II.   DISCUSSION

### A.   Legal Standard On A Motion For A More Definite Statement

Federal Rule of Civil of Procedure 12(e) provides: "A party may move for a

more definite statement of a pleading to which a responsive pleading is allowed but

which is so vague or ambiguous that the party cannot reasonably prepare a

response."  The purpose of Rule 12(e) is to allow defendants to remedy inadequate

complaints to which they cannot reasonably be expected to respond.  See McQueen

v. Woodstream Corp., 244 F.R.D. 26, 34 (D.D.C. 2007).  This is consistent with

the notice pleading standard of Rule 8(a), which only requires a plaintiff to allege

sufficient facts to place the defendant on notice of the plaintiff's grounds for relief.

See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).  If a complaint

satisfies the notice requirements of Rule 8(a), then the allegations should also be

sufficient for a defendant to answer the allegations.  See United States v. Ga.

Power Co., 301 F. Supp. 538, 543-44 (N.D. Ga. 1969).  For this reason, courts

disfavor motions for a more definite statement and generally deny them when they

only seek information that is readily available through discovery.  McQueen, 244

F.R.D. at 35; Ga. Power, 301 F. Supp. at 544.

Giddens and Dutton contend that they cannot answer the CFTC's complaint

because it fails to satisfy Federal Rule of Civil Procedure 9(b), which requires a

party alleging fraud to "state with particularity the circumstances constituting

fraud."  It is possible for a pleading to fail to allege fraud with particularity yet still

provide sufficient detail for a party to answer the allegations.  See 5C Charles Alan

Wright et al., Federal Practice and Procedure § 1376 (3d ed. 2004) (noting courts'

varying approaches "[w]hen a claim based on fraud or mistake is sufficiently

definite that the pleader can prepare a responsive pleading but not sufficiently

particularized to satisfy the requirements of Rule 9(b)").  The better course in such

a situation is to file a motion to dismiss the complaint for failure to state a claim.

But some courts have granted motions for a more definite statement when faced

with complaints that fail to allege the circumstances of fraud with particularity, at

least where the request for a more definite statement accompanies a motion to

dismiss.  See, e.g., GTAS Asset Solutions, LLC v. African Methodist Episcopal

Church, Inc., No. 1:11-cv-1148-RWS, 2012 WL 95429, at *2 (N.D. Ga. Jan. 12,

2012) (granting motion for more definite statement where defendant filed motion

to dismiss or alternatively for a more definite statement, where complaint failed to

plead fraud with particularity but plaintiff was entitled to opportunity to amend

complaint).  The Court will evaluate the CFTC's allegations against the

particularity requirements of Rule 9(b).

      B.    <u>The Requirement to Plead Fraud With Particularity</u>

      Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or

mistake, a party must state with particularity the circumstances constituting fraud

or mistake.  Malice, intent, knowledge, and other conditions of a person's mind

may be alleged generally."  To satisfy Rule 9(b), a complaint claiming fraud must

set forth "(1) precisely what statements were made in what documents or oral

representations or what omissions were made, and (2) the time and place of each

such statement and the person responsible for making (or, in the case of omissions,

not making) same, and (3) the content of such statements and the manner in which

they misled the plaintiff, and (4) what the defendants obtained as a consequence of

the fraud."  <u>Brooks v. Blue Cross & Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1371

(11th Cir.1997) (internal quotation marks omitted).

The particularity requirement "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation marks omitted). "The application of Rule 9(b), however, must not abrogate the concept of notice pleading." Id. (internal quotation marks omitted). Rather, "Rule 9(b) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief." Brooks, 116 F.3d at 1371 (internal quotation marks omitted). "Allegations of date, time or place satisfy the Rule 9(b) requirement that the *circumstances* of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule." Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1512 (11th Cir. 1988); see also United States ex rel. Grubbs v. Kannaganti, 565 F.3d 180, 188 (5th Cir. 2009) ("Rule 9(b)'s ultimate meaning is context-specific, and thus there is no single construction of Rule 9(b) that applies in all contexts." (internal quotation marks and citation omitted)).

The particularity requirement may be relaxed for allegations of "prolonged multi-act schemes." Clausen, 290 F.3d at 1314 n.25. The relaxed standard permits

a plaintiff to plead the overall nature of the fraud and then to allege with

particularity one or more illustrative instances of the fraud.  See id.  Even under the

relaxed requirement, however, a plaintiff is still required to allege at least some

particular examples of fraudulent conduct to lay a foundation for the rest of the

allegations of fraud.  See id.; Medalie v. FSC Sec. Corp., 87 F.Supp.2d 1295,

1306-07 (S.D. Fla. 2000) (Rule 9(b) is relaxed "if the alleged fraud occurred over

an extended period of time and the acts were numerous," but this "does not negate

the plaintiff's duty to adequately plead the contents of the alleged fraudulent

misrepresentations and the places where the activity was to have occurred"); cf.

United States ex rel. Hebert v. Dizney, 295 F. App'x 717, 723 (5th Cir. 2008)

(while Rule 9(b) does not require *qui tam* plaintiff alleging long-running scheme to

list every false claim with particularity, "the allegedly great extent and complexity

of a fraudulent scheme does not excuse a failure to plead at least one false claim

with the requisite specificity");.

     C.    The CFTC's Allegations Of Fraud

     The CFTC alleges that between approximately January 2010 and October

2010, Defendants Giddens and Dutton committed a series of frauds in conjunction

with their operations of their respective commodity pools.  (Compl. ¶ 1).  The

Complaint describes the overall nature of the frauds, which involved setting up

commodity pools, soliciting investments in the pools, and using the commodity pool participants' funds for forex transactions.  The CFTC alleges that Giddens and Dutton's engaged in three categories of fraudulent conduct.  First, Giddens and Dutton allegedly solicited investors by falsely stating that investments in their commodity pools were guaranteed to yield monthly returns of five to ten percent (5-10%) from conducting forex transactions.  (Id. ¶¶ 23-24).  Second, Giddens and Dutton allegedly issued promissory notes to pool participants that falsely promised to pay the participant five to ten (5-10%) percent of the principal investment each month.  (Id. ¶ 25).  Finally, each month between June and October 2010, Giddens and Dutton allegedly issued account statements to participants that falsely stated that the forex transactions were yielding returns of five to ten percent (5-10%) per month.  (Id. ¶¶ 29-35).

Defendants Giddens and Dutton contend in their Motion for a More Definite Statement that they are unable to respond to these allegations because they had 28 and ten investors, respectively, and the Complaint does not specify the particular circumstances of each allegedly fraudulent statement made to each investor.  This argues for too strict an interpretation of Rule 9(b), which allows plaintiffs in cases such as this, involving allegations of prolonged fraudulent activity, to plead the circumstances of fraud by indicating particular, representative instances of

fraudulent conduct.  See Clausen, 290 F.3d at 1314 n.25.  Giddens and Dutton's request that the CFTC plead its evidence regarding every allegedly false statement to every investor pertains to evidence that may be exchanged during discovery and that is not necessary in order to answer the allegations of fraud.

The question instead is whether the CFTC has alleged with particularity the circumstances of one or more specific fraudulent statements by Giddens and Dutton that would illustrate and support the CFTC's more general allegations of fraud.  The CFTC generally alleges that Giddens and Dutton engaged in three different categories of fraudulent conduct during the course of operating their commodity pools.  Under the facts of this case, the CFTC is required, at a minimum, to allege the particular circumstances of at least one fraudulent statement or activity per defendant, representative of each of the three categories of fraudulent activity identified by the CFTC.  Defendants simply are entitled to know how the CFTC claims Defendants defrauded investors in each of these three classes of alleged fraud.

For the allegations that Defendants Giddens and Dutton made fraudulent statements to solicit pool participants, the Court concludes that the CFTC's allegations lack sufficient particularity.  For Defendant Dutton, the Complaint alleges generally that he "misrepresented to pool participants that in return for their

investment in the pool, the pool participants would receive, depending on how much they invested, a guaranteed five or ten percent (5 or 10%) monthly return on their investment." (Compl. ¶ 24). This is plainly insufficient under Rule 9(b). Other than the general allegation that the scheme occurred between January and October 2010, there is no indication of the time these statements occurred, where they occurred, in what manner the statements were transmitted, or to whom they were made. The allegations also do not indicate, except at a high level of generality, the substance of the allegedly false statements. There has been no showing that this information is uniquely within the possession of the defendants or that the CFTC lacks the ability to obtain this information. The CFTC is required to plead with particularity the circumstances of at least one of the alleged fraudulent misrepresentations made by Dutton in connection with his solicitation of pool investors.

The Complaint similarly alleges that Defendant Giddens "misrepresented . . . [that] pool participants would receive, depending on how much they invested, a guaranteed five or ten percent monthly return on their investment." (Compl. ¶ 23). The Complaint further alleges that "in late March 2010," Giddens "promised [a particular] pool participant that he would receive a guaranteed ten percent monthly return on his investment from trading forex." (Id. ¶ 26). While this further

allegation provides more detail for Giddens's alleged fraud than for Dutton's, it is still insufficient.  The Complaint alleges that a promise was made "in late March 2010," but on the whole the allegation fails to allege the content of the allegedly false statement or to whom the statement was made.  The CFTC clearly has in mind a particular instance of alleged fraud but it did not describe the circumstances of the fraud.  The CFTC is therefore required to plead with particularity the circumstances of at least one of the alleged fraudulent misrepresentations made by Giddens in connection with his solicitation of pool investors

The CFTC also alleges that Giddens and Dutton issued promissory notes that fraudulently promised returns on participants' investments of five to ten percent (5-10%) each month.  For Defendant Dutton, that is the extent of the CFTC's allegations regarding this category of fraudulent statement.  The Complaint does not specifically allege that any particular promissory note was issued to any particular investor on any particular date.  The Court concludes that the CFTC has not adequately alleged the circumstances of these allegedly fraudulent statements made by Dutton to Pinnacle Capital investors.

For Defendant Giddens, however, the Complaint alleges that a specific false promissory note was issued by Giddens to a particular investor on March 25, 2010. The specific investor is not named, but he is described with sufficient detail.  The

allegation refers to a particular investor who wired $10,000 to Currency Management's Wachovia bank account on or about March 25, 2010.  The Court therefore concludes that the CFTC has sufficiently alleged against Defendant Giddens the circumstances of this category of fraud.

The final aspect of Defendants Giddens and Dutton's allegedly fraudulent conduct involved generating monthly accounting statements that falsely overstated the performance and profitability of participants' investments.  For both Giddens and Dutton, the Complaint alleges particular investors who made particular investments on particular dates, and who received account statements on the twenty-fourth of each month between May 2010 and October 25, 2010.  The false statements were delivered to the investors using the websites for Currency Management and Pinnacle Capital.  (Compl. ¶¶ 30, 32).  The account statements allegedly misrepresented that those particular participants' investments had yielded returns of ten percent (10%), compounded each month.  The statements were false because the investments did not earn the stated returns and instead suffered significant losses each month from June to October 2010.  (Id. ¶¶ 33-35).  The Court concludes that these details with respect to those two particular investors are sufficient to sustain the CFTC's allegations that Defendants Giddens and Duttons committed fraud by issuing false account statements to pool participants.

In summary, the Court determines that the CFTC is required to provide a more particular statement of their claims by providing a representative example of the fraudulent of conduct of Defendants Giddens and Dutton as follows:

1. Defendants Giddens and Dutton's alleged fraudulent misrepresentation to solicit pool participants, and

2. Defendant Dutton's alleged fraudulent promises of returns in notes issued to investors.

D.     Movant Walker's Motion to Intervene

Movant Walker seeks to intervene in this matter to seek the return of approximately $80,000 that he invested with Defendant Gomez.  The Federal Rules of Civil Procedure provide:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
> . . .
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  To intervene as a matter of right under Rule 24(a)(2), a movant must show that "(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or

impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit."   Fox v. Tyson Foods, Inc., 519 F.3d 1298, 1302-03 (11th Cir. 2008).

Walker's motion to intervene is timely, as he filed his Motion to Intervene soon after learning that Defendant Gomez's funds had been frozen and before substantial progress occurred in this case.  He also has an interest in the property that is the subject of this action.  He has identified $80,000 in funds that he transferred to Defendant Gomez for the purpose of conducting forex transactions. Those funds have been frozen as a result of this lawsuit, and are potentially subject at least partially to the CFTC's claims for restitution.  (See Compl. at 27).  The CFTC seeks to return to the victims of Giddens and Dutton's alleged fraud the funds invested with Defendant Gomez, which could have the practical effect of preventing Walker from obtaining the return of some or most of the specific funds in which he claims an interest.  Finally, the CFTC cannot represent Walker's interest in this litigation because they have adverse views of how to account for Walker's investment, the extent to which Walker's funds commingled with the funds from Pinnacle Trade, and the scope of the relief to which Walker should be entitled.  (See CFTC's Resp. Mot. Intervene).

None of the parties object to Walker intervening in this action as a Plaintiff. In light of Walker's significant interest in some of the funds that are the subject of the CFTC's claims against the defendants, it is appropriate to permit Walker to intervene in this action to assert his claimed interests in the funds invested by Gomez. The Motion to Intervene is therefore granted.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants Louis J. Giddens, Jr. and Anthony W. Dutton's Motion for a More Definite Statement [42] is **GRANTED**. Plaintiff U.S. Commodity Futures Trading Commission is ordered to file, on or before March 16, 2012, an amended complaint alleging fraud against Defendants Giddens and Dutton as detailed in this Order. The CFTC also is required to file a redlined copy of the Amended Complaint clearly identifying the amendments made.

**IT IS FURTHER ORDERED** that Movant Freeman L. Walker's Motion to Intervene as a Plaintiff [53] is **GRANTED**.

**SO ORDERED** this 24th day of February, 2012.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE